**TUANU`UTELE SAI, Claimant,**

v.

**SONNY LE`I THOMPSON, TIKERI N. THOMPSON, LEANA MISIUAITA, SOFENI VA`ENA, TAGATA A.T. LE`I and POROTESANO T. TUIOLOSEGA, Counter-claimants.**

**[In re Matai Title Le`i of the Village of Ofu]**

High Court of American Samoa
Land and Titles Division

MT No. 03-98

November 8, 2004

Before KRUSE, Chief Justice, SAGAPOLUTELE, Associate Judge, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Tuanu`utele Sai, Pro Se
 For Sonny Le`i Thompson, Charles V. Ala`ilima
 For Tikeri N. Thompson, Afoafouvale L.S. Lutu
 For Sofeni Va`ena, Pro Se
 For Porotesano T. Tuiolosega, *Pro Se*

## OPINION AND ORDER UPON REMAND

Following the death of Le`i Fereti in 1985,[1] the *matai* title Le`i attached to Ofu village, Manu`a, has since been vacant. The title vacancy has been a matter pending since April 8, 1994, when Tuanu`utele Sai ("Tuanu`u") first filed his application with the Territorial Registrar to be registered as the next holder of the Le`i title. His action triggered a number of *matai*-succession counter-claims sparking a protracted and prolonged dispute.

The matter was finally tried before the Land and Titles Division (the "trial court") on March 6-11, 2003. In its Opinion and Order filed June 6, 2003, the trial court awarded the Le`i title to counter-claimant Tikeri N. Thompson ("Tikeri"). Following an unsuccessful motion for a new trial, counter-claimant Sonny L. Thompson ("Sonny") appealed.

On appeal, the Appellate Division (the "appellate court") ruled error below in two respects and remanded accordingly. With regard to the statutory criterion of hereditary right, A.S.C.A. § 1.0409(c), the appellate court found error in the trial court's failure to

> make findings with respect to the hereditary rule that should be most appropriately applied in this case, particularly including but not limited to Sonny's customary adoption status with the last Le`i titleholder and, as a consequence, did not reach any legal conclusions in this regard. This lack of findings and conclusions was clear error.

*In re Matai Title Le`i*, 8 A.S.R.3d 54, 60 (App. Div. 2004).

---

[1] Rp. Tr. at page 125

Secondly, the appellate court found error in "the trial court's failure to make findings regarding the composition of the family clans." *Id.*

Although upholding the trial court's findings on the third[2] and fourth[3] statutory criteria, the appellate court nonetheless suggested, without elaboration, that the trial court might want to also revisit these latter findings after its reconsidering the hereditary and family clan issues.

### Discussion

The time for rehearing applications, before the Appellate Division under A.C.R. 40, having expired, and after noting from the Clerk's file thatthere are no pending motions for rehearing, we assert jurisdiction herein and address our mandate.

### I. Hereditary Issue

A. Traditional Rule vs. *Sotoa* Rule

On this issue, the appellate court explained:

> [Appellant] Sonny's customary adoption and sibling like relationship with [appellee] Tikeri *may* appropriately call for application of the Sotoa rule rather than the nearest titleholder.

*Id.* (Emphasis added).

Consistent with our mandate, we articulate our reasons for applying the traditional rule, rather than the *Sotoa* rule, in assessing hereditary entitlement. Secondly, we take up the issue as to the appropriateness of the Sotoa rule in light of "Sonny's customary adoption."

Recently, in *In re Matai Title Mauga*, 5 A.S.R.3d 270, (Land & Titles Div. 2001), we summarized this court's approach to the issue of hereditary right, as set out in A.S.C.A. § 1.0409(c)(1), in the following manner:

> In the vast majority of *matai* title disputes before the Court, a candidate's hereditary right has been calculated by tracing his lineage to his nearest ancestor holding the title. *See In re Matai Title Leiato*, 3 A.S.R.2d 133, 134 (App. Div. 1986). This formula was almost universally applied until 1984, when the Court in *In re Matai Title Sotoa*, 2 A.S.R.2d 15 (Land &

---

[2] "[F]orcefulness, character, and personality . . . and knowledge of Samoan Customs . . . ." A.S.C.A. § 1.0409(c)(3)

[3] "[V]alue . . . to the family, village, and country." A.S.C.A. § 1.0409(c)(4).

Titles Div. 1984) suggested an alternative method of calculation as being more desirable. Under the rule in *Sotoa*, a candidate's blood relationship is to be determined by reference to his relationship to the original titleholder, and not by descent to the nearest past titleholder. The Court's reasoning was that "every new titleholder does not start a new line of heredity." *Id.* at 15.

The *Sotoa* rule, however, is not of general application, particularly where family genealogical understanding is contentious. *In re Matai Title Lolo*, 25 A.S.R.2d 175, 176 (Land & Titles Div. 1994); *In re Matai Title Tuaolo*, 28 A.S.R.2d 97 (Land & Titles Div. 1997), and where family history suggests a contrary tradition and understanding of entitlement. *In re Matai Title Tauaifaiva*, 5 A.S.R.2d 13, 14 (Land & Titles Div. 1987). *See also In re Matai Title La`apui*, 4 A.S.R.2d 7, 10 (App. Div. 1987), Murphy J. separately concurring ("Whether a family traces hereditary rights directly to the original title holder or to the last living holder of the title is . . . a matter of custom and tradition.")

*In re Matai Title Mauga*, 5 A.S.R.3d at 272-273. The *Sotoa* rule, however, did not go without "disparaging comment from the Appellate Division on its efficacy." *See In re Matai Title Tauaifaiva*, 5 A.S.R.2d at 14, citing to *In re Matai Title Leiato*, 3 A.S.R.2d 133 (App. Div. 1986) and *In re Matai Title La`apui*, 4 A.S.R.2d 7 (App. Div. 1987). The rule first emerged from out of nowhere, without the benefit of argument, but by way of a stipulation presented by the parties to the *Sotoa* court. *Id.* at 15.

More recently, the Appellate Division, in *Misaalefua v. Hudson*, 1 A.S.R.3d 23, (App. Div. 1997), noted:

When the original titleholder is known, the *Sotoa* rule can be less arbitrary than the traditional rule. However, the *Sotoa* rule is only suited in certain circumstances. The *Sotoa* rule is appropriate where, as in *Sotoa*, the family traditionally traces the blood relationship back to the original titleholder. *See In re Matai Title Sotoa* at 15; *see also In re Matai Title Tauaifaiva*, 5 A.S.R.2d 13, 15 (Land & Titles Div. 1987). Finally, use of the *Sotoa* rule may be appropriate where the family history is largely harmonious. *See In re Matai Title Lolo*, 25 A.S.R.2d 175, 176 (Land & Titles Div. 1994).

1 A.S.R.3d at 25.[4]

---

[4] Although the appellate court, citing to *In re Matai Title Laie*, 18 A.S.R.2d

■ From the cases then, the law to be distilled in these matters is that the *Sotoa* rule not being of general application, a claimant proposing application of the rule must at least prove that the family before the court traditionally traces blood relationships back to the original titleholder, and that family history on the identity of the original titleholder is not contentious.

With this in mind, we look to the first issue on remand.

### 1. Appellant's Changed Position on Appeal

Contrary to the position he convincingly put before the appellate court, Sonny canvassed quite the opposite position before the trial court, actually conceding the *inappropriateness* of the Sotoa rule.[5] Before the appellate court, Sonny argued:

> While the lower court here made a written finding of fact of blood showing that among the candidates [Sonny] did (sic) have the closest blood connection to the nearest title (sic) it made no examination of the evidence or any written legal conclusion that the "nearest titleholder" standard would be applied in this case rather the "*Sotoa* Rule." The failure to make this written legal conclusion was error under A.S.C.A. § 1.0409.

Appellant's Brief at 10. However, before the trial court Sonny in his closing arguments, read by his counsel Charles V. Ala`ilima from a pre-prepared statement, unambiguously submitted the following:

---

35, 37 (Land & Titles Div. 1991), had noted that the *Sotoa* rule "may also be appropriate in cases where some clans of the family have not held the title for several generations," the Court was equally moved to note that "[i]n light of the many recent *matai* title decisions which have awarded title to a candidate who did not prevail on best hereditary right, we question the continued use of the *Sotoa* rule for this equitable purpose." *See* 1 A.S.R.3d at 25 n.1.

[5] *Cf. Olotoa v. Bartley*, 3 A.S.R.2d 21, 22 (Trial Div. 1986), holding that an argument that counsel could have made at trial but did not is waived and may not be raised at any future stage of the litigation. *See also Amerika Samoa Bank v. Haleck*, 6 A.S.R.2d 54, 57 (App. Div. 1987); *Leota v. Sese*, 12 A.S.R.2d 18, 20 (App. Div. 1989).

In deciding the customary and statutory requirement of "hereditary right" to *matai* titles, the courts have generally employed two formulas to calculate such right; one is the normal formula of the relation directly to the first *matai*, the nearest *matai* in your line, in your hereditary line, and the other one is back to the first *matai* of the title; direct descent from the original titleholder and direct descent from the nearest titleholder . . . . Under the normal rule, which is used in tracing your rights back to the nearest titleholder in your line, from the evidence presented, it appears that Tikeri has 1/2 blood, Sonny has 1/64 blood, Vaena has 1/16, Tuanu'u taking the line that he wishes to use has about 1/16, and Porotesano has 1/64. *The alternative "Sotoa rule" used for tracing back to the original titleholder, I don't think is appropriate in this case because it seems from this case the candidates don't want that rule to apply. The lack of clarity in the case also to who the clans would make it more difficult for the Court to make a decision on.* In any case, all members or all candidates have the blood requirement to hold the title.

Counsel Alailima's Closing Arguments, Rp. Tr. at pages 3-4 (emphasis added).[6] Therefore, the appropriateness of the *Sotoa* rule was actually a non-issue at the trial level.

In any event, and compelled by our mandate, we find not only the evidence, but by reason of Sonny's own admission at trial, that family history on the identity of the original titleholder is a contentious issue, and thus renders the *Sotoa* rule inappropriate to assess hereditary right. At the same time, no showing having been made by Sonny as to the appropriateness of the *Sotoa* rule, we maintain and so find that the *Sotoa* rule is inappropriate in this matter.[7]

---

[6] We note that the Appellate Division apparently did not have a transcript of the parties' final arguments before it, as we could not find it in the record filed with the appellate court. Sonny, as the only appellant, had selectively ordered a partial transcript of the proceedings below; his final arguments were conspicuously absent from the record upon which his appeal was based.

[7] Moreover, the matter of the traditional rule versus the Sotoa rule was not raised before the trial court at Sonny's motion for a new trial. *Cf. Kim v. Star-Kist*, 8 A.S.R.2d 146, 150 (App. Div. 1988) ("A motion for new trial is a statutory prerequisite to an appeal. A.S.C.A. § 43.0802. All motions must 'state with particularity the grounds therefor.' T.C.R.C.P. Rule 7. This is particularly important in the case of a motion for new trial, one of whose purposes is to avoid unnecessary appeals by alerting the trial court to possible errors or omissions in its opinion."); *Taulaga v. Patea*, 17 A.S.R.2d 34, 35 (App. Div. 1990) ("If no timely motion for reconsideration or new

### 2. Sonny's Customary Matai Adoption & Hereditary Entitlement

We note at the outset that the appellate court's reference to Sonny's "customary adoption" by the last titleholder Fereti Le`i, *see In re Matai Title Le`i,* 8 A.S.R.3d at 53, is purely Sonny's categorization of the evidence, and not ours. Sonny argued before the appellate court:

> The lower court refused to consider the testimony of a customary adoption of appellant by appellee's father, Le`i Fereti, the former titleholder. *The customary adoption of a relative to a title by a titleholder is a well recognized tradition in Samoa for it binds communal families together over generations by bringing farther relatives closer to the title.*

Appellant's Brief at 11. (Emphasis added.)

We did not make any findings on Sonny's claim of "customary adoption" by Le`i Fereti, nor give it any significance to advance his hereditary claim for a number of reasons:

(1) Sonny's claim to customary adoption being "a well recognized tradition in Samoa," is simply that; a mere claim, void of any evidentiary basis whatsoever, on the record before us, to sustain such a finding. We find that the rather casual bandying of the conclusory labels such as "customary *matai* adoption," does not a custom establish. Nor are the Samoan Associate Judges prepared to credit Sonny's unproven proposition with the same notoriety such as would warrant our taking judicial notice of an asserted custom.[8]

(2) We find it inappropriate to essentially trump the legislature on the issue of "customary *matai* adoption," simply to advance a candidate's hereditary claim. At all relevant times,[9] the legislature had preempted the notion of "*matai* adoption" with the enactment of Public Law 7-32, 1962, codifying previous law as Sections 5.0307 et seq., Code Amer. Samoa,

---

trial conforming to the 'particularity' requirement of T.C.R.C.P. 7(b)(1) is filed within the statutory ten-day deadline, then the Appellate Division lacks jurisdiction to entertain an appeal."); *Soli Corporation v. Amerika Samoa Bank,* 25 A.S.R.2d 40, 41-2 (App. Div. 1993).

[8] *See* T.C.R.Ev. Rule 201(b).

[9] The evidence before us showed that Sonny was fifty one (51) years of age at the time of trial. Rp. Tr. at 18. The late Le`i Fereti was awarded the Le`i *matai* title on December 7, 1953. *See Tupua v. Fereti,* 3 A.S.R. 99 (Trial Div. 1953). Le`i Fereti died in 1985. Rp. Tr. at 185. Elemental arithmetic then reveals that Sonny was between the ages of 1 and 33 years when Fereti was the Le`i titleholder.

1961 Ed., and subsequently reprinted as 17 A.S.C. §§ 701-03. These enactments provided in relevant part:

> § 701....
> (a) When a *matai* shall adopt any person into his family other than by judicial proceedings, he shall thereupon give notice of said adoption to the clerk of the High Court.
> (b) The notice shall contain the following information:
> (i) The name, age and village of the adopted person;
> (ii)The name of the natural parents of the adopted person ...;
> (iii) The name, age and village of the adopted *matai*.
> § 702....
> (d) If the clerk is satisfied that all requirements have been met, he shall list the adoption in the list of adopted persons.
> (e) *Adoption shall not be valid until such listing is complete* (emphasis added).

■ Sonny unequivocally admitted on the stand in open court that he had no papers to prove his *matai* adoption claim. Rp. Tr. at 21. The short of it is, therefore, that while we can take judicial notice of subject matter legislation nullifying *matai* adoption claims not in accordance with statutory procedure, we simply cannot take judicial notice of a Samoan custom according to the bald claims of a *matai* candidate -- here Sonny. T.C.R.Ev. Rule 201(b). Therefore, in light of the mandatory language of applicable law at all relevant times, 11 A.S.C § 702(e), we find that the evidence does not sustain Sonny's claim to *matai* adoption.

■ (3) The notion of *matai* adoption is, in our view, a slippery slope to venture into, especially from the realm of hereditary entitlement. For one thing, the Fono in its wisdom backed away completely from continuing down that road by repealing the *Matai* Adoption statute in 1976. *See* Public Law 14-22, 1976. Additionally, with the enactment of A.S.C.A. § 1.0409(c), and legislative adoption of the "best hereditary" criterion, restricting *matai* entitlement to claimants with "blood" connections to the title, the Fono necessarily proscribed against future entitlement claims based upon a non-blood basis, such as *matai* adoption and title appointments because of special *tautua* (traditional service).[10]

---

[10] Such past instances are not unknown in the annals of this court; spawning its own set of intra-family problems. We refer, for example, to the histories of the Mauga and Tuaolo families of Pago Pago discussed in *In re Matai Title Mauga*, 5 A.S.R.3d 270 (Land & Titles Div. 2001) and *In re Matai Title Tuaolo*, 1 A.S.R.3d 33, 37-38 (App. Div. 1997) respectively, suggesting that adopted or non-blood holders had given birth to the formation of new family clans. Indeed, within the Le`i family itself, there remains a contentious issue as to whether or not Le`i Maea and his descendants are blood heirs to the Le`i title and as to whether or not they

Finally, it is suggested that we consider yet another variant of the *Sotoa* rule, to permit parties from a common clan to assert heredity claims by tracing lineage to the nearest common ancestral titleholder, for purposes of boosting a cousin's hereditary percentage. While this suggestion might arguably promote equity and fairness, advocated by the *Sotoa* case, within a clan, we find the suggestion problematic in the scenario where *matai* claimants are from a family with multiple clans such as the case before us. Thus to permit Sonny to claim, for equity's sake, parity with Tikeri by measuring hereditary entitlement to a common ancestor with Tikeri, may well be tantamount to doing inequity to the claimant who descends from a different clan to Sonny and Tikeri's, but who otherwise prevails over Sonny under the traditional rule.

B. Application of the Sotoa Rule

Even in following this intra-clan variant of the *Sotoa* rule—measuring hereditary rights according to Sonny's and Tikeri's nearest known common ancestor—we find that Tikeri nevertheless prevails in the hereditary rights criterion. In *In re Matai Title Fonoti*, the Land and Titles Division recognized that where a daughter and sister of the previous *matai* titleholder disputed title, the *Sotoa* rule required recognition of the sister's claim under the principle that she was a generation older. 21 A.S.R.2d 113, 114 (Land & Titles Div. 1992). So, too, in the present case. Here, the evidence shows that Tikeri is the son of the prior Le'i titleholder and belongs to the same generation as Sonny's mother. Because, as the appellate court observes, "only blood relationships count" in determining *matai* title rights, Sonny's alleged adoptive-like relationship with Tikeri's father is not a fact sufficient to alter his biological position on the family tree. 8 A.S.R.3d 60 (quoting *In re Matai Title Mulitauaopele*, 17 A.S.R.2d 75, 82 (Land & Titles Div. 1990).[11] Accordingly, because Tikeri precedes Sonny by a generation, Tikeri has a closer hereditary link to the nearest common Le'i titleholder, and, pursuant to the suggested intra-clan variant of the *Sotoa* rule, retains the superior hereditary claim.

---

constitute a separate branch or clan development within the family. *See Siluano v. Vaena*, 1 A.S.R. 392, 393 (Trial Div. 1927). *See also* Tikeri's Testimony, Rr Tr. at 134.

[11] *Mulitauaopele* states that "the natural son of a previous title holder has a 1/2 relationship to the title . . . whereas the adopted son or grandson has no fractional relationship at all." 17 A.S.R.2d at 82. The *Mulitauaopele* court goes on to say that a court "is not free to recognize such reasons [other than blood relations] for awarding a disputed matai title to a person who is not descended from a previous title holder." *Id.* at 83.

## II. Clan Support

The appellate court urges us to make more detailed findings regarding the composition and preference of the family clans. We are therefore now presented with the difficult task of having to evaluate the credibility of divergent views surrounding the composition of the clans, as customary within the Le`i family, and the wishes of a majority or plurality of them. A.S.C.A. § 1.0409(c)(2); *In re Matai Title Faumuina*, 26 A.S.R.2d. 1, 4 (App. Div. 1994). As both of the parties cannot be correct, we must determine which party has, through mistake or fabrication, misstated the facts.

In the current case, Sonny contends that when the family meets for discussions, they generally divide themselves into four groups descending from Le`i Isumama, Pule, Le`i To`afala, and Le`i Maea. Tikeri, on the other hand, states that there are three clans of the Le`i family named Pule, Isumama, and Fa`atautu, the children of Tupuaeleele.[12] The evidence suggests that of the two, Tikeri's understanding of clan composition, as customary within the Le`i family, is more believable.[13]

First, Tikeri's position is consistent with that previously recognized by this court. In *Siluano v. Vaena*, 1 A.S.R. 392, 394 (Trial Div. 1927), we awarded Siluano the Le`i title in part because of our determination that Siluano had the greatest understanding of all the traditions and background of the family. It was Siluano's belief that Maea was an adopted son of To`afala. *Id.* at 394-95. Similarly, in *Tupua v. Fereti*, 3 A.S.R. 99, 101 (Trial Div. 1953) where Siluano once again testified that To`afala had no descendants, this court concluded that Siluano was certainly "in a position to know the tradition of the Le`i family." Here, whereas Sonny questions those who challenge Maea's status as a blood relative, Tikeri, as Siluano, maintains that Le`i Maea has no blood connection to the Le`i title and that this is not disputed in the family. In light of the fact that Tikeri's testimony corresponds more closely to the testimony of knowledgeable Le`i titleholders, as accepted by this court in

---

[12] Tupuaeleele was, according to Sonny, Rp. Tr. at 36-7, and Tikeri's, Rp. Tr. 127-8, version of family history, the progenitor of the Le`i family and the object of the original *tofiga* (appointment) by Tuimanu`a at Malaetele.

[13] We recognize that a number of the original contestants at trial are no longer parties to this dispute, having opted not to appeal the issue of clan preference apparently satisfied that their respective interests were not adversely impacted by our decision. However, without the opportunity to be further heard on the matter of clan custom and composition on remand, we feel constrained, cognizant of the statutory standard of "natural justice and convenience," A.S.C.A. § 3.0242, to limit our findings on this issue as determinative only between the two litigants before us.

241

the past, we find Tikeri's assessment of clan composition to be the more persuasive version.

Second, and perhaps more convincing, assuming *arguendo* Sonny's account of clan history as true, his version is inherently inconsistent, regardless of Maea's status. Sonny maintains that To`afala and Maea make up separate family clans. Yet, the family dispute surrounding Maea has been whether he is the true or adopted son of To`afala. If Maea were the true son, as Sonny contrarily contends, he would belong to the To`afala clan, and not a separate branch because he would be the blood-related son of To`afala. On the other hand, if Maea were the adopted son, as Siluano and Tikeri suggest, then as such, his lack of blood relation would preclude his being the basis of a family clan altogether. Consequently, that Tikeri has precluded Maea from the family clans indicates that of the two, his account is the only one that is logically consistent.

Finally, Sonny's discussion of clan background indicates inaccurate knowledge of family history. In his testimony, Sonny argued that "[t]he very first Le`i titleholder according to history passed on down to us from our ancestors was Le`i Ta`atu." Rp. Tr. at 19. Yet, in the *Siluano* case, Siluano did not maintain that Ta`atu was the first of the Le`i family *matai*. Instead, Siluano simply "named the last ten *matais*" of the Le`i family of which Ta`atu was the first of those mentioned. 1 A.S.R. at 393. Sonny's testimony, then, displays that his knowledge of family history is more likely derived from a cursory reading of past litigation rather than a deep-rooted understanding of Le`i family background.

Moreover, Sonny's position on the identity of the original titleholder changes when it comes to his explanation on the Le`i title's origins. In both his testimony, Rp. Tr. 36-7, and his sworn response to Questionnaire No. 24, Sonny is in agreement with Tikeri's acknowledgement that the Le`i title originated with Tuimanu`a's appointment of Tupuaeleele as the first titleholder.

As an additional note, the court finds it interesting that while both candidates claim to have the same father, and thus the same source of family history, each has a widely divergent viewpoint of clan composition and custom. Because we are convinced that Le`i Fereti would have no reason to tell Tikeri one account of family history, and Sonny another, we can only conclude that this inconsistency has been created by one of the candidates themselves.

Turning now to the issue of clan preference, in our earlier opinion, we noted that the family met to address the *matai* vacancy in 1996 concluding that either Tuanu`u or Tikeri should hold the title. Rather than choosing among the two, however, we determined that the family

deferred to Tuanu`u and Tikeri to decide between each other as to who should assume the title. Tuanu`u then offered the position to Tikeri. Although Sonny again argues that another "family" meeting took place in July 2002, with fourteen attendees, including Vaena, Leama Misiuaita, and Sonny, selecting Sonny as *matai*, we still find and conclude that this meeting did not in fact constitute true clan consensus, but rather was an effort by those contestants of the title to support Sonny by purposefully bypassing input from other family members and contestants such as Tuanu`u and Tikeri.

### III. Forcefulness, Character, and Personality

Alternatively, the appellate court urges us to once again consider whether:

> [r]egardless of which candidate may still prevail under the *Sotoa* rule on the hereditary right criterion, closer characterization of blood ties may result in a different assessment of the candidates' relative qualifications under the four statutory criteria and a different award of the title.

*Sonny Le`I Thompson v. Tikeri Thompson* , 8 A.S.R.3d 59, 60 (App. Div. 2004).

In our trial opinion, we determined that although all candidates appeared more or less equally versed in Samoan customs, Tikeri and Sonny surpassed the others with regard to forcefulness. Yet, as we observed, Tikeri's humility, patience, and lack of posturing throughout the succession process impressed us the most in the categories of character and personality. Unlike the other candidates, we noted that Tikeri favored family resolution over personal ambition and the often-pursued strategy of premature registration of title with the Territorial Registrar. Moreover, we were concerned with Sonny's character and personality in light of his offer of communal rental income to Tikeri in exchange for Tikeri abandoning his title claim. Having once again revisited the evidence, we see no reason to modify our earlier assessment of the candidates' relative strengths of forcefulness, character and personality, and knowledge of Samoan customs. Lastly, and in light of our discussion and assessment under the preceding heading "Clan Support" (*supra*), the fact that Sonny has apparently attempted to present his own self-serving version of clan support to bolster his candidacy once again reinforces our view that Tikeri retains superior qualities of character.

## IV. Value to Family, Village, and Country

Likewise, Tikeri continues to impress us the most in the category of value to family, village and country. In our trial opinion, we noted that all candidates were approximately equal in terms of their value to village, but that Sonny and Tikeri's public service, unique expertise, and vocational skills placed those two above the others in public worth. Tikeri, however, far surpassed all candidates with regard to his value to family. With his heavy involvement in his late father's administration, his familiarity with the family, its natural resources, and administration and preservation of family rental income, Tikeri has demonstrated a strong sense of family value that suits him for family leadership. Having revisited this evidence, we are once again convinced of the correctness of our earlier assessment of the strengths and weaknesses of the candidates.

## Order

On the foregoing, we conclude that Tikeri prevails over Sonny on hereditary considerations, as well as on the third and fourth criteria as specified in A.S.C.A. § 1.0409(c). We further conclude that Tikeri is qualified to hold the *matai* title Le`i, and, therefore, the Territorial Registrar shall in accordance with A.S.C.A. § 1.0409(b) register the *matai* title Le`i in Tikeri N. Thompson.

It is so ordered.